**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KARENA A. REILLY,** | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | **CIVIL ACTION NO. 26-CV-1397** |
| | **:** | |
| **INDEPENDENCE FIRE SPRINKLER,** | **:** | |
| *et al.*, | **:** | |
| **Defendant.** | **:** | |

**MEMORANDUM**

**SURRICK, J.**                                                                                    **MAY 14, 2026**

In a prior Memorandum, the Complaint filed by Karena A. Reilly asserting Title VII claims against her former employer Independence Fire Sprinkler ("IFS") and her former supervisor Kevin West was dismissed. *Reilly v. Indep. Fire Sprinkler*, No. 26-1397, 2026 WL 660447 (E.D. Pa. Mar. 9, 2026). The claim against IFS was dismissed because, even though Reilly had checked boxes on the form she used to file her case indicating she was terminated and suffered retaliation on the basis of her gender/sex, she failed to allege facts providing context for her claims and only asserted that she suffered an adverse employment action due to a personality conflict. *Id*. at \*3. The claim against West was dismissed because Title VII only makes it unlawful for an "employer" to discriminate, not for coworkers or supervisors to do so. *Id*. (citing 42 U.S.C. § 2000e-2(a)(1)). Reilly was granted leave to amend if she was able to allege additional facts about her claims against IFS. *Id*. Reilly has now filed an Amended Complaint (ECF No. 9), in which she names IFS, West, and two other coworkers, Erika Morrison and Christine Snyder, as Defendants and raises gender-based wrongful termination and retaliation claims.[1] (Am. Compl. at 2, 10.) For the following reasons, the Amended Complaint will be dismissed.

---

[1] The Court previously instructed Reilly that coworkers are not proper defendants under Title VII. Therefore, the claims against West, Morrison, and Snyder are not plausible.

I.      **FACTUAL ALLEGATIONS**[2]

Reilly was employed by IFS as a scheduler.  (Am. Compl. at 4.)  On December 4, 2025, she met with Erika Morrison and was offered a promotion to the position of sales administrator. (*Id*.)  Christine Snyder of human resources met with her the next day to go over the job description and requirements for the position.  (*Id*.)  On December 10, Reilly formally accepted the promotion and executed the required paperwork.  (*Id*.)  Her start date was to be January 5, 2026, and the position came with a pay raise.  (*Id*.)

On January 2, 2026, Reilly was working in a shared office space with coworkers Mike Kruz, Gail Papale, and Alicia Winning.  (*Id*.)  She was contacted by a customer complaining about a property with outstanding violations that required work to be completed by a specified deadline. (*Id*. at 5.)  Upon review, Reilly determined that a work order had already been closed by Morrison despite the work not being completed.  (*Id*.)  Reilly discussed the issue with Papale and stated, in effect, "I do not understand why this work order was closed when it was not completed.  There are too many individuals closing work orders."  (*Id*.)  Papale agreed with her, but Winning asked her "whether [she] needed to step away."  (*Id*.)  Around noon, Winning requested that Reilly attend a meeting in a conference room during which she stated that Reilly's "manner of speaking made her feel 'uncomfortable' and 'threatened.'"  (*Id*. at 6.)  Reilly told her that the conversation had not been directed toward Winning, but toward Papale.  (*Id*.)  Afterward, Reilly spoke with Kruz who was present during the incident, and Kruz indicated that Reilly had not said anything inappropriate. (*Id*.)

---

[2] The allegations are taken from Reilly's Amended Complaint (ECF No. 9), which consists of the Court's form and additional handwritten pages.  The Court deems the entire submission to constitute the Amended Complaint.

On January 5, 2026, Reilly was informed that her transition into her new position would be delayed until a replacement scheduler was trained. (*Id*.) The trainee resigned, however, and Morrison informed Reilly that the transition would be further delayed pending the hiring of another replacement. (*Id*.) On January 8, Reilly was called into a meeting with Snyder and Morrison and presented a performance improvement plan ("PIP") concerning the January 2 incident. (*Id*.) This was the first time she had received any form of disciplinary action. (*Id*. at 7.) Snyder stated that multiple individuals were affected, but Reilly believes that no formal investigation was conducted since she, Kruz, and Papale were not interviewed. (*Id*.) Reilly refused to sign the PIP and after the meeting "informally inquired" with coworkers whether her communication style had ever made them uncomfortable. (*Id*.)

On January 9, 2026, Reilly was again called into a meeting with Snyder who told her that her speaking with others about the matter was "illegal" and in violation of the PIP. (*Id*.) Reilly disputed that any such restriction was stated in the PIP and sent a written communication to Snyder, Morrison, and General Manager Joe Verello acknowledging receipt of the PIP but formally disagreeing with its contents. (*Id*. at 8.) On January 12, at the end of the day, West approached her in the parking lot and "referenced 'tension' in the workplace" but Reilly denied being responsible for any tension. (*Id*.) On January 14, 2026, after attempting to access training modules associated with the PIP and finding they had not been made available, she was summoned to a meeting with Snyder who told her she was "not a right fit" for the company. (*Id*.) Reilly received no other substantive explanation for her termination. (*Id*. at 9.) The next day she informed Snyder that "her pay rate was incorrect" since she was due her raise as of January 5, and Reilly later received an email from Snyder stating her hourly rate had been updated. (*Id*.) Reilly seeks money damages for her claims. (*Id*. at 12.)

## II.     STANDARD OF REVIEW

Because Reilly has been granted leave to proceed *in forma pauperis* (*see* ECF No. 8), 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  Although this "plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the Amended Complaint as true, draw all reasonable inferences in Reilly's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

The Court construes *pro se* allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a

court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

Federal law prohibits employment discrimination based on race, color, religion, sex, national origin, age, and disability.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623; 42 U.S.C. § 12112).  Reilly's Amended Complaint fails to allege plausible termination and retaliation claims under Title VII.

### A.   Termination

To state a claim for employment discrimination under Title VII, a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will uncover proof that her membership in a protected class was "either a 'motivating' or 'determinative' factor" in her employer's adverse employment action.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  Reilly asserts she was terminated due to sex/gender discrimination, but she fails to allege any facts that would raise a reasonable expectation that discovery would uncover evidence that her membership in a protected class was either a motivating or determinative factor in IFS's termination decision.  The Amended Complaint describes an incident in which Reilly was disciplined by her female supervisor concerning her interactions with male and female coworkers that management claimed made them uncomfortable.  While Reilly denies that this was true, she presents no facts to suggest that her sex or gender were involved in any way in her termination. Accordingly, her Title VII termination claim will be dismissed.

## B.    Retaliation

Reilly also checked the box on the form she used for her Amended Complaint indicating that she asserts a retaliation claim.  As the Court instructed Reilly previously, for a retaliation claim under Title VII to be plausible, a plaintiff must "plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Reilly*, 2026 WL 660447 at *2 (citing *Connelly*, 809 F.3d at 789).  Title VII protects "those who oppose discrimination made unlawful by Title VII." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  Not every complaint about employment entitles its author to protection from retaliation under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting that Title VII "does not set forth a general civility code for the American workplace" (internal quotation marks omitted)).  "Rather, only complaints about discrimination prohibited by Title VII—that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2—constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (*per curiam*) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995)).  "Thus, for a complaint to amount to 'protected activity,' it must implicate an employment practice made illegal by Title VII." *Id*. at 203 (citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)).  "General complaints of unfair treatment will not suffice." *Id*. (citing *Barber*, 68 F.3d at 702).  Because Reilly fails to allege any facts indicating that she engaged in conduct protected by Title VII,[3] her retaliation claim is not plausible and will be dismissed as well.

---

[3] While Reilly adds an allegation that, after she was terminated, she raised a discrepancy in her pay rate that the company acknowledged, this is not a plausible allegation of Title VII retaliation.  She does not

## V.      CONCLUSION

For these reasons, the Amended Complaint will be dismissed.  Having provided Reilly with a second opportunity to state her claims plausibly, the Court concludes that further attempts at amendment would be futile.  Therefore, the dismissal will be with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"); *see also Gowans v. Axsom*, No. 25-2070, 2025 WL 2848907, at *2 (3d Cir. Oct. 8, 2025) (*per curiam*) (affirming dismissal of complaint where district court instructed plaintiff about the deficiencies in his complaint and gave leave to amend but the plaintiff's subsequent filing "did not heed the Court's direction").  An order of dismissal will be entered separately.  Fed. R. Civ. P. 58(a).

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**

---

allege that she engaged in protected activity, and she does not allege that IFS paid her an incorrect rate *because* she had engaged in protected conduct.  A liberal reading of the Amended Complaint suggests that the incorrect rate was a mistake that IFS acknowledged.